I didn't try the case and I wasn't the initial appellate counsel. There's all kinds of briefs in this case. My client was allowed to file I think three supplemental and a reply brief on another issue. I'm going to confine my remarks primarily to the search of the car issue. Not that I'm waiving any other issue that I've raised or he's raised. First of all, the government argues there was no standing for me to even file this appeal or raise the search issue. There's two cases in this circuit, Mohamed and Besta say there is standing. Basically the evidence would be that this woman rented this car from Budget Rent-A-Car. She rented it for her I think boyfriend or good friend Roger so he could look for a job. She didn't put him down as an authorized driver but that's why she rented the car and she testified to that. She gave Roger the keys. She didn't restrict Roger from who he could loan the car to and in fact she wasn't surprised that he loaned the car to Rashawn Long who was his friend. Well, I just want to make sure we, this is going to require us to take Mohamed and Besta one step further because both of those cases are premised on the fact that the person who gave permission was the authorized driver. In this case, the person who gave the permission was a non-authorized driver. Is that correct? Yes. So that's going to be our, that's going to be our issue I think we have to face in this case. Are we going to, can Mohamed and Besta be extended to a non-authorized driver giving permission? Right. So, and it could be, so obviously it could go multiple layers down the line under your theory. Well, under the facts, she basically for all intents and purposes said she knew Roger was going to let other people drive it and she didn't tell him that he couldn't do that. So I think she's implicitly giving her permission to Roger to allow other people to drive it. And in fact, she said she's not surprised that Rashawn Long, she knows him, she knew he was a very good friend of Roger's. She was told that Rashawn Long was driving the car prior to this incident even occurring. Roger told her, I gave the keys to Rashawn. She didn't at that time say, get him back. I don't give him permission. So I think under the facts of this case, you can impute that permission that she gave Roger to Rashawn Long. Then he's driving it that day and he parks it behind his house. He knows the woman, but she doesn't recognize him and I don't want to go through all the facts, you know, the court's well aware of the facts I think. In any event, the police are called, they come, they see this abandoned car. The owner of the property wants it gone. Then my client comes running up and says, wait, wait, wait, that's my car. So they find out it's a rental car and they call, it was a budget rental car. They call budget. For some unknown reason to me, budget won't answer the phone during business hours. And so they can't find out who was renting the car. So they decide to tow the car, but their policy says an abandoned car should not be towed unless the person has given a ticket or a summons. They don't give them a ticket or a summons. They give it to him when he's already in jail later, many hours later. Does the policy, I haven't studied, does it address when the car, there's some question, I have some question whether this was abandoned, but even if it was abandoned, if it's on property and the homeowner says, get that out of here, does the policy say, oh no, don't do that? No, no. It says you can do that, but you have to put a summons either on the car if the owner's not there or the driver, or give the driver a ticket for parking this illegally parked car, which they didn't do until way after it was towed. That's just a minor point. But yeah. So. It seems to me that part of the policy doesn't apply to this. I mean, just the policy not to tow abandoned cars to me doesn't fit this situation. Well, they think it's, they characterize it as an abandoned car. Pardon? The police characterize it as abandoned, which is why, you're not going to give him, you're not going to let him drive it off. They're going to take it. Well, the Fourth Amendment isn't subjective. Well, they run his record through first, you know, and then they find there's this warrant out of what they think was Kansas City, Missouri, but once again, how they can confuse Missouri and Kansas, I don't know, but it was a Kansas City, Kansas warrant. They eventually find that out. It's not extraditable. So he should be free to go. There is nothing holding him, but they don't let him go. They keep him locked up, handcuffed in a police van so they can search the car. And the officer testifies, I wanted to search the car to see if there was anything illegal we could detain him on. They also call this special unit when they find out my client's name, and they call this special unit who has this, I don't know, there's some notice out to always call this particular officer if this client is arrested. So they call him. So he takes over. They know there's no warrant out, they have no legal reason to keep him, but they keep him detained, and this officer instructs the initial officer, Ballot, to open the car. Well, he has a tow truck driver, I think, he's a Slim Jim, to open the car. That again violates the policy. The policy specifically says when a vehicle is observed to be abandoned or is illegally parked and is causing a problem or hazard, which this car is because she doesn't want it there, officers will tow the vehicle. Officers will make every reasonable effort to contact the owner. If an owner cannot be contacted, which they couldn't find out who, but you won't answer the phone, and that's the owner of the car, and the vehicle is secured, which this car was, it was locked, the officer towing the vehicle will document any item left in the vehicle that is in plain view on the tow-in report. The officer should also document the report that the listed items were observed in plain view and that the vehicle was secured at the scene. Not force open any locked vehicle. The officers testified they were specifically, the policy specifically was you are not to force open a car in this situation you just towed, but they forced it open in violation of their own policy. The reason they forced it open is because they were looking for something illegal, and that's exactly what they told the wagon driver, keep him in the wagon, even though there's no warrant out. I thought the problem here was that Mr. Lyons came running back without the keys, so we have a locked car that needs to be towed off an objected property owner's property, and a person who was in physical control of it admits that and says no I don't have the keys. He tells them where they are. Which house? In what apartment? Well it was his grandma's house down the hill. Did he offer to go get them? No he did not. Well it seems to me that the police have a legitimate dilemma. Why would they need the keys to tow the car? Pardon? I don't know why they would need the keys to tow the car, they could tow the car. Well is that clear from the record? I would think that the tow company would want, they probably access cars all the time in order to tow them. Is that just me? It doesn't say. It says he forced the car open, he was told to, and he knew it violated the policy, the tow in policy. And even if you violate the policy it's not necessary. Who said that? Not the tow truck driver? No this officer below. No I'm, what's the tow truck driver want to do? He wants to tow a locked car without access? There is nothing in the record about what his position is on this at all that I can say. He just had Slim Jim and he was told to do that. So we don't know that this driver or the towing company's policy as to towing locked cars but that they have an ability to access and release emergency brakes and whatever else they may want to do. I just don't know. Well I think they can lift it up on a flatbed truck and they don't need, I mean they're not towing it and dragging it behind. I mean there's ways to tow a car without keys. And basically they wanted, they wanted to look inside the car for something illegal to hold him. Well the driver wanted to tow him. That was his job. Right. Alright. I'll just save my time for it. Thank you. Mr. MacArthur. Good morning your honors and may it please the court. My name is Jeff MacArthur. I was trial counsel in this case. I was counsel at sentencing and in all briefs on appeal. The defense has put forth five arguments. Two were advanced by defense counsel, three by the defendant himself. I'll focus on the argument that defense counsel focused on during her time. And I think, Judge Loken, I think you hit the nail on the head which there's a threshold argument. And at no point during the suppression hearing did the defendant demonstrate that he had a reasonable expectation of privacy in this car. I didn't make that point. I believe you brought up. I did. I apologize. I apologize. Judge Malloy. And because he failed. I have a serious problem with your standing argument. So I certainly didn't invite you to count me as in your camp. Didn't mean to do that your honor. But I would say that yes, in fact the defendant did lack standing to claim that his fourth amendment rights were violated. The car was not owned by the defendant. The car was not rented to the defendant nor was his name on the rental agreement. The car was not located on his property and nor did the defendant have permission from the lawful renter. Let's go to the merits of the car search if we have to reach it. Why the toll policy is so significant here and if so why don't all these technical violations of the policy matter? So if in fact we find that the defendant has standing there are two issues in regard to the search. One was that the defendant gave consent for the search to take place. He said it would be okay and he explicitly said that it would be fine to look in the car for the police to do that. Not only did he give consent but again as was mentioned during defense counsel's argument the owner of the property on which this car sat wanted this car removed from her property. The defendant ran up, claimed that car was his, yet presented no direct evidence that in fact he had control of the car. He had no keys to the car. He was just claiming that yeah that's my car. And so still we have a problem where there are no keys to access the car. It can't be moved except by the tow truck driver who is rapidly approaching. And so again we have the property owner saying I want this car gone from my property. If this was a consent search why are we even talking about inventory searches? It's just, it's another argument that the government's put forth to rebut the fourth amendment violation that the defendant has put forth. There was consent but to the extent that this court finds that there was not consent, the officers had permission to look in that car based on a lawful search inventory to tow. And if you look at the tow policy on annex A which is page 4 of the appendix. Wait a minute, I've got a fact question. Who entered the car? What person? What person was the first one? The tow truck driver opened the car. Alright, so you just said that they had this problem and they had to get it open because he was on the way. But factually he opened the car. Right, the tow truck driver opened the car. On what initiative? On whose initiative? On the police officer's initiative. So the tow truck driver was not allowed to do what he would normally do? He was instructed to access the car? He was instructed to... And then get out of the way so it could be searched? To get out of the way so that an inventory could be performed. Yes, Your Honor. That's clearly not an inventory search then. It doesn't purport to be. Well, using the word inventory is simply a pretext for what happened. No, Your Honor. Every officer who tows a car, in this situation in particular... Yes, but... So even if the tow truck driver would have just lifted it up onto a flatbed and taken it away, policy would have prohibited that? Can't be. Then it just gets to the tow truck parking lot and then they do the inventory search. This is not a legitimate inventory search, in my view, as I'm listening to this. Unless the tow truck driver, in the normal course of things, would enter the car, open it up to a possible dispersion of what's in it, so that an on-the-scene inventory was required. Yes. Okay, so that's not what happened. Instead, the police officer, dying of curiosity, instructed the tow truck driver to open the car. If a car is going to be towed in this circumstance... If it's proved that the tow truck driver would have done that anyway, then this is not a valid inventory search. It's a complete pretext. Not because the policy's bad, but because it was not legitimately invoked. In every circumstance that... You give me a case that's inconsistent with what I just said. It certainly wasn't a pretext to search this vehicle. I don't know what the findings were. I thought the officer said it was a pretext. He said, I wanted to search... I said, hold him in the car so I can search the vehicle and find something I'll arrest him on. Didn't he say that? He said he wanted to see if there was anything illegal in the car, and if, you know, as I mentioned before... He says, keep him in cuffs in the back of the car so I can do a search to find something illegal. You don't think that raises the inference that it's a pretext? I understand the inference, but again, we have to look at the objective facts rather than his subjective intent. And if his subjective intent, in fact, correlated with the policy that KCPD had, which was, in every instance where you tow a car... I suppose it was an inventory search, and he has standing. Now what's your position? If there's no lawful inventory search... I know you've said consent. Is there anything else that could save the district court's decision other than consent? If the inventory search was invalid because pretextual and there's standing. Then, and if consent is now off the table... No, well, I didn't say it was off the table. I just said, is there any other? The government's... I mean, you've already said, well, we invoked it. Why did you argue in inventory? Well, we needed an alternative. My question is, have you got another one? I have three reasons why the search is legal. If my instinct as to the inventory search is correct, are we just left with the consent, which is a perfectly legitimate issue. I don't know what the findings were. Yes. If, in fact, this court finds that the defendant did have standing, and, in fact, this court finds that the inventory search was pretextual, and this court also finds that the defendant did not give consent, then those are the three arguments that I've put forth before this court as to why the district court was correct. I've not briefed, nor have I offered an alternative to those three. I will say, regarding the testimony of Ms. Tasha Phillips, who was the lawful renter of that vehicle, she at no point testified that she gave permission to Rashawn Long. And, in fact, the magistrate court judge described her testimony as dubious at best, I believe, were his words. But without a doubt, there was no affirmative evidence that she had ever given permission to Rashawn Long, specifically, to be driving that car. And I think, as a threshold measure, that should, in the inquiry. There were a couple other arguments advanced by the defendant. I suppose I should address the significant upper barriers. Can I go back? You said, but she did testify she rented it for him. She testified she rented it for herself, and then loaned it to a third party named Roger, and that Roger somehow gave this car to Rashawn Long. So this is that extra step. This is why Muhammad and Best really don't have a leg to stand on in this case, because the lawful renter at no point gave permission to Rashawn Long himself. She gave permission to someone else. Now, Roger, if it had been Roger running up the hill, and he had the keys, perhaps he might actually have a claim for a reasonable expectation of privacy, at least under Muhammad and Best. But this third party, Rashawn Long, doesn't. And to the extent Your Honors wanted to hear some argument on the significant upper variance in this case, I would just simply note the judge noted the numerous 35-53 factors at play, the criminal history, the nature and circumstances of this offense, promoting respect for the law. In his soliloquy, he named each and every one of these. He described it as a case like no other. I asked for 40 years of sentencing. The judge gave the defendant 30 years. And it was because of his numerous endeavors into the killing of various people. We presented evidence on three murders this man had carried out, as well as another attempted murder that got someone paralyzed from the waist down for the rest of their life. And there was evidence deduced at sentencing that showed that Mr. Long had potentially killed, by his own admission, up to 23 individuals. It was for all those reasons, and the precedent in the circuit, that the upward variance was warranted in this case. And if there are no further questions, I would request that this court affirm the decisions of the district court. Thank you very much. Ms. Hunt, have some time? Yes, she has a minute. Did I adequately stumble through the essence of your inventory search argument? You did. I just want to point out a couple other things that are in the record. The officer... Well, first of all, Sergeant Hamilton, who is the officer that is notified, he basically testified after his arrival, Hamilton instructed the tow truck driver to forcibly open the car using a Slim Jim. So it was not the tow truck driver's initiative, or his thought, or anything else. It was ordered to do that by the police. Ballot, the officer that was initially there, that put the defendant in the patrol wagon, he testified he was going to inventory the car to see if there was anything to hold the defendant on. He admitted the purpose of the inventory search, in this case, was to try to find something illegal. If they were unsuccessful, then they would let the defendant go. So they held him, and that was their purpose. And they forced the car open to accomplish their purpose, and I think it was predictable. There was no consent. That was objected to. The government has nothing to show consent in this case. Thank you. Thank you, Counsel. The case has been well briefed in our view. It is clarified again, so we'll take it under advisement.